United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 19, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30696

_____

UNITED FIRE AND CASUALTY CO,

Plaintiff - Counter Defendant - Appellant,

versus

HIXSON BROTHERS INC; ET AL,

Defendants,

HIXSON BROTHERS INC,

Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this dispute regarding whether an insurer has a duty to defend its insured, United Fire & Casualty Company ("United Fire") appeals the district court's partial grant of summary judgment in favor of Hixson Brothers, Inc. ("Hixson"). In the declaratory judgment action below, the district court found that United Fire had a duty to defend Hixson in a state court action in which plaintiffs not party to this appeal allege that Hixson failed to perform funeral services as required by certain

1

burial insurance policies. Because the state court plaintiffs' allegations do not unambiguously exclude United Fire's coverage of Hixson's liability, we affirm.

## I. FACTS AND PROCEEDINGS

On May 24, 1999, a class action suit was filed against Hixson in Louisiana state court. The plaintiffs in the state court litigation allege that Hixson breached burial insurance policies.[1] These policies provided that Hixson, as the "Official Funeral Director of the Company," would perform, *inter alia*, funeral services, including a casket, burial garments, embalming, funeral preparation, and arrangements of flowers. The plaintiffs allege that if a burial insurance policyholder bought or used any coffin other than a very inexpensive, shoddy coffin, Hixson would inform the policyholder that she had forfeited all her benefits under the burial policy and would receive only a cash credit of $1,000. Dorothy L. Mathews ("Mathews"), one of the named plaintiffs, alleges she was billed $6,299, less the $1,000 credit for the burial insurance policy. Mathews also alleges that, through this "failure to provide the goods and services specified in the burial policy," Hixson caused her and other similarly-situated plaintiffs mental anguish and other injuries.

At the times during which Hixson allegedly failed to perform under the burial insurance policies, a Commercial General Liability ("CGL") policy issued by United Fire to Hixson was in effect. Pursuant to this policy, United Fire defended Hixson for over five years. In 2004, United Fire sought a declaratory judgment in federal district court that it had no duty to defend or cover Hixson. United Fire moved for summary judgment, and Hixson filed a cross-motion for summary judgment. The district court partially granted Hixson's motion, ruling that United Fire owed Hixson a defense

---

[1] The state court plaintiffs had entered into the policies with Central State Life Insurance Company. The obligations of Central State were assumed in 1994 by Kilpatrick Life Insurance Company, who was made a defendant in the underlying litigation.

under the CGL because of the possibility of coverage under one clause of the contract, the Mortician's Professional Liability Endorsement (the "Endorsement").[2] United Fire appeals the partial summary judgment in favor of Hixson.

## II. STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment de novo. *Twin City Fire Ins. Co. v. City of Madison*, 309 F.3d 901, 904 (5th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In determining whether there is a genuine issue of material fact, all facts must be evaluated in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

On appeal, United Fire principally contends that it has no duty to defend Hixson.[3]

### A. Applicable law

---

[2]The district court also granted partial summary judgment in favor of United Fire, ruling that the state court allegations did not constitute an "occurrence" under the standard liability coverage provisions. That ruling is not appealed here.

[3]United Fire does tersely mention the coverage issue in its brief, urging, without any argument, that we hold that United Fire had no duty to cover Hixson for liability arising in the underlying litigation. At best, we can only assume that United Fire's argument regarding coverage is coterminous with its duty-to-defend argument. Under that view, we reject it because, as discussed below, we reject the duty-to-defend argument. To the extent that the two arguments are distinct, the coverage argument is waived because of inadequate briefing. *See Fed. Trade Comm'n v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 n.10 (5th Cir. 2004) (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)).

"In a diversity case such as this one, federal courts must apply the choice of law rules in the forum state in which the court sits." *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005) (internal quotation omitted). The Louisiana choice of law rules require that Louisiana law govern this dispute.[4] *Id.* Under Louisiana law, an insurer has a duty to defend its insured unless the allegations in the petition unambiguously exclude coverage. *See Am. Home Assurance Co. v. Czarniecki*, 230 So. 2d 253, 259 (La. 1969); *Alert Ctr., Inc. v. Alarm Prot. Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992). If the petition discloses the *possibility* of liability under the policy, the insurer has a duty to defend. *See Alert Ctr.*, 967 F.2d at 163. Courts must review only the four corners of the petition and the four corners of the insurance policy when making a duty-to-defend determination. *See id*; *Lamar Adver.*, 396 F.3d at 660 ("Whether an insurer has a duty to defend is determined solely by comparing the allegations in the petition against the insured with the terms of the policy at issue—the so-called eight corners rule.") (internal quotation and alteration omitted). If any facts alleged in the petition support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured. *Lamar Adver.*, 396 F.3d at 660. This court should interpret the petition liberally when making this determination. *Id*.

**B. Whether the petition unambiguously excludes coverage**

Pursuant to the eight corners rule, we first outline the particulars of both the state court petition and the insurance policy. We then review the district court's decision that United Fire must defend Hixson.

The state court plaintiffs filed a class action petition pursuant to article 591, *et seq.*, of the

---

[4]In particular, Louisiana law governs because the policy was delivered in Louisiana. *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677 (5th Cir. 2000).

Louisiana Code of Civil Procedure. The relevant allegations in it include:

15. The burial policy provided for a complete funeral as specified below:

1.      Death Benefits-Funeral

In the event of death of the Insured within the State of Louisiana, funeral benefits will be furnished to the Insured through Hixson Brothers, Inc., the Official Funeral Director of the Company, which shall include: Casket, Burial garments, Embalming, and Preparation for Burial, Funeral coach, Use of Funeral Home, Arrangement of Flowers, Conducting the Funeral, [and] Necessary Cemetery Equipment.

. . .

20. . . . [Mathews, a named plaintiff,] was forced to forfeit all of the funeral benefits specified in the policy.

. . .

22. By not providing the merchandise and services in the . . . burial policy, the defendants completely breached the terms of the burial insurance policy.

. . .

51. The defendants failed to provide the goods and services specified in the burial policy.

The Endorsement in United Fire's insurance policy provides:

We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or mental anguish arising out of the rendering or failure to render professional services as a mortician caused by . . . malpractice, error, negligence or mistake . . . .

The district court interpreted the Endorsement to require United Fire to provide a defense "[b]ecause the underlying state court petition outlines facts which, taken as true, could support a claim that Hixson Brothers (by reason of an error as to the extent of coverage intended in the burial policies at hand) is liable for mental anguish damages arising out of the failure to render funeral

5

services." In particular, the district court first construed the term "mortician" to include "funeral director" and therefore construed the Endorsement to include the activities of the funeral director set forth in the state court petition. The district court then determined that the state court petition included the allegation that Hixson committed an "error" when it interpreted the burial insurance policies and, consequently, is liable for mental anguish damages for the failure to render funeral services. This allegation, according to the district court, concerned activities "contemplated by the [Endorsement]." Accordingly, the district court concluded that, as the petition disclosed a possibility of coverage, United Fire must defend Hixson.

**(1) Refusal to render professional services**

United Fire first argues that, assuming the plaintiffs' allegations are otherwise included within the Endorsement's coverage, those allegations should be viewed as a "refusal" to perform instead of a "failure" to perform. United Fire distinguishes the two terms, focusing on the willfulness involved: refusing to perform is an affirmative act; failing to perform is an omission. However, since our review is limited to the state court petition and to the insurance policy, *see Alert Ctr.*, 967 F.2d at 163, United Fire's argument regarding this distinction is not persuasive. The petition plainly alleges that Hixson "*failed* to provide goods and services specified in the burial policy." (emphasis added). Whether post-petition information reveals that this failure was actually a refusal is irrelevant to whether United Fire must defend Hixson in the underlying litigation. *See Lamar Adver.*, 396 F.3d at 660; *Vaughn v. Franklin*, 00-0291, p. 7 (La. App. 1 Cir. 3/28/01); 785 So. 2d 79, 84 ("Although the allegations of the petition may ultimately turn out to be incorrect or untrue, the insurer is still obligated to provide a defense."), *writ denied*, 01-1551 (La. 10/5/01); 798 So. 2d 969.

**(2) Failure to render professional services**

6

United Fire next argues that the allegations in the petition do not include an allegation of a failure to render professional services, and, therefore, coverage is unambiguously excluded. Limiting our review to the four corners of the petition and to the four corners of the insurance policy, we first examine whether the petition contains allegations that Hixson failed to *perform* under the policy. We then examine whether the alleged failure includes a failure to perform *professional* services. Answering both questions in the affirmative, we hold that the allegations in the petition do not unambiguously exclude coverage under the Endorsement.

United Fire argues that the state court petition does *not* allege a failure to perform and instead merely alleges a dispute over the price of the services. In support of this contention, United Fire argues that the funeral services were in fact performed and that the dispute arose only after the plaintiffs purchased caskets not included in the burial insurance policy. Hixson counters that the state court petition plainly alleges a failure to perform.

We agree with Hixson. The state court petition contains an allegation that Hixson "failed to provide the goods and services specified in the burial policy."[5] To view the petition as alleging merely a pricing disagreement would be to construe the petition strictly against the insured, rather than liberally as required by Louisiana law. *See Lamar Adver.*, 396 F.3d at 660. Moreover, to do so would be to skirt the principal requirement of an eight-corners review.[6] We therefore hold that the petition

---

[5]The quoted sentence from the petition is not the only one that includes an allegation that Hixson failed to render services under the burial policy. Paragraphs 20 and 22, construed liberally according to Louisiana law, also include such allegations.

[6]United Fire's contention that the funeral services were provided and that, consequently, the dispute is about pricing may be supported by facts that have come to light in the underlying litigation since the petition was filed in 1999. But those facts are irrelevant to the determination of whether United Fire owes Hixson a defense. *See Vaughn*, 00-0291, p. 7; 785 So. 2d at 84. *See also Czarniecki*, 230 So. 2d at 259–60.

alleges a failure to perform under the policy.

However, this holding alone is not dispositive. Because the Endorsement only covers a failure to render *professional* services, we must determine whether an allegation that Hixson failed to "provide the goods and services specified in the burial policy" constitutes a professional services allegation.

United Fire argues that a mortician's professional services include the "preparation of corpses for burial, conducting funeral services, and actual burials" and that the state court petition does not allege that Hixson inadequately performed these services. Hixson counters by arguing that "[t]he allegations of the state court petition clearly state that Hixson refused to perform the services of a mortician under the burial policy."

Under Louisiana law, "professional services" in an insurance contract are defined as "services performed by one in the ordinary course of the practice of [one's] profession, on behalf of another." *Jensen v. Snellings*, 841 F.2d 600, 613 (5th Cir. 1988) (quoting *Aker v. Sabatier*, 200 So. 2d 94, 97 (La. Ct. App.), *writ denied*, 202 So. 2d 657 (La. 1967)). *See also Natural Gas Pipeline Co. of Am. v. Odom Offshore Surveys, Inc.*, 889 F.2d 633, 636 (5th Cir. 1989) (citing the "professional services" definition in *Aker* when interpreting a professional services policy exclusion). An act that can be done by "any unskilled or untrained employee" that does not involve the exercise of professional judgment is not a professional service. *Am. Cas. Co. v. Hartford Ins. Co.*, 479 So. 2d 577, 579 (La. Ct. App. 1985) (internal quotation omitted). *See also Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 335–36 (5th Cir. 2001) (discussing the definition of professional services under Louisiana law).

As noted, the plaintiffs in the underlying litigation allege that Hixson failed to provide "goods

and services specified *in the burial policy*" (emphasis added). In determining whether such goods and services are professional services, we consider relevant the quoted language of the petition, which refers us to the burial policy for a list of goods and services allegedly not provided. The burial policy coverage included: "Casket, Burial garments, Embalming, and Preparation for Burial, Funeral coach, Use of Funeral Home, Arrangement of Flowers, Conducting the Funeral, [and] Necessary Cemetery Equipment." Construing the petition liberally, as we must, we hold that these services are those that the state court plaintiffs allege were not performed. *See Lamar Adver.*, 396 F.3d at 660.

The dispositive question then becomes whether the services listed in the burial policy are professional services. An untrained or unskilled employee could not deliver the goods and services to be provided under the policy. Providing a casket, burial garments, embalming, a funeral coach, a funeral home and flowers together in a proper funeral service requires many decisions for which skilled judgment is required.[7] Indeed, United Fire acknowledges that conducting funerals is a professional service. We therefore hold that the state court petition includes a professional services allegation.[8]

## IV. CONCLUSION

In sum, we hold that the state court plaintiffs allege a failure to render funeral services, and, by doing so, they allege that Hixson failed to render professional services. Since these allegations do

---

[7]Louisiana's funeral director licensing requirements support this conclusion. *See* LA. REV. STAT. § 37:842 (requiring that, to become a licensed funeral director, a person must complete certain educational requirements, serve as an apprentice for at least one year, and pass "an examination conducted by the board to practice the *profession* of funeral directing") (emphasis added).

[8]Since we hold that the plaintiffs in the underlying litigation allege a failure to provide professional services by alleging a failure to perform funeral services under the burial policy, it is unnecessary to address United Fire's contention that Hixson's interpretation of the insurance policy was not a professional service.

not unambiguously exclude coverage under the Endorsement, the judgment of the district court is

AFFIRMED.