# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-50564
Summary Calendar

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2024

Lyle W. Cayce
Clerk

Jacquelyn Zepora Brown,

*Plaintiff—Appellant*,

*versus*

San Antonio Food Bank,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-507

———————————————————————

Before Davis, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant, Jacquelyn Zepora Brown, sued her former employer, the San Antonio Food Bank (the "Food Bank"), alleging claims of employment discrimination and retaliation under 42 U.S.C. § 1981 and Chapter 21 of the Texas Labor Code. The district court granted summary judgment in favor of the Food Bank. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50564

## I.

In May of 2019, the Food Bank hired Brown in its Catalyst Catering department as a part-time line chef. Once hired, Brown informed her supervisors and co-workers—Lorraine Aguirre, Erika Borrego, and Johanna Tesch—that she suffered from a hearing impairment and had been diagnosed with tinnitus, dizziness, vertigo, and Ménière disease. In light of her hearing impairment, Brown asked Aguirre, Borrego, and Tesch to speak as loudly as possible, give her the opportunity to read lips, provide instructions in writing, and supply microphones or headsets.

As a condition of employment, the Food Bank required employees in the catering department to undergo drug screenings. Within four months of working at the Food Bank, Brown was selected for two screenings. In September of 2019, Brown complained to Aguirre and Borrego that she felt she was being "targeted [for the drug screenings] because [she is] African American." Shortly thereafter, Aguirre and Borrego began to reduce her hours, and consequently, her pay decreased. Brown informed Tesch, the Food Bank's Director of Personnel and Training, that Aguirre and Borrego were reducing her hours in retaliation for her complaint about racial discrimination in the drug screenings.

In December of 2019, Brown filed a confidential discrimination complaint through the Food Bank's third-party ethics hotline, asserting that Aguirre and Borrego were cutting her hours and charging her for her uniforms. After receiving Brown's anonymous complaint from the hotline, Tesch opened an investigation into the complaint's allegations. As part of this investigation, Tesch discussed the complaint with Aguirre and Borrego. In January of 2020, Brown spoke with Tesch about her hearing disability and requested accommodations. Specifically, Brown informed Tesch that she had repeatedly reminded Aguirre and Borrego about her disability and

2

requested accommodations, but that her requests were ignored. Tesch told Brown that she would talk to Aguirre and Borrego. Three months later, Brown filed another complaint with Tesch regarding Aguirre's behavior.

On April 25, 2020, the Food Bank announced that it was closing the catering department due to the COVID-19 pandemic. At the time, the catering department had one part-time chef position (filled by Brown), one full-time chef position (filled by Aguirre), one full-time business manager position (filled by Travis Savely), and two temporary chef positions (filled by Benito Chavez and Doiyna Reyna). Following the catering department's elimination, the Food Bank hired Aguirre and Savely to fill open positions in other departments. Brown applied and interviewed for a position in a different department, but was not hired. Thus, the Food Bank ultimately laid off Brown and the two temporary employees.

On July 30, 2020, Brown filed a charge of discrimination with the Equal Employment Opportunity Commission. After receiving her right-to-sue letter, Brown filed a *pro se* complaint alleging claims under Title VII for race, color, age, and disability discrimination. A magistrate judge appointed counsel for Brown, and she subsequently filed an amended complaint alleging race discrimination, disability discrimination, failure to accommodate a disability, and retaliation claims under the Texas Labor Code, as well as a race discrimination claim under 42 U.S.C. § 1981. The Food Bank moved for summary judgment on all of Brown's claims, and the magistrate judge recommended granting the motion in full. The district court adopted the magistrate judge's recommendation over Brown's objections, and Brown timely appealed.

## II.

On appeal, Brown argues the district court erred in granting summary judgment on her various discrimination and retaliation claims. "We review

No. 23-50564

a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party."[1]  A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."[2]

As an initial matter, the parties agree that the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*[3] is applicable to Brown's race discrimination, disability discrimination, and retaliation claims. Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation.[4]  If she does so, the burden shifts to the defendant "'to articulate some legitimate, nondiscriminatory [or nonretaliatory] reason,' for its action."[5]  If the defendant can provide such a reason, the burden shifts back to the plaintiff to establish that the proffered reason is pretextual.[6]

**A.**

We begin with Brown's race discrimination claims under § 1981 and § 21.051 of the Texas Labor Code.  A plaintiff establishes a *prima facie* case of

---

[1] *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (citation omitted).

[2] Fed. R. Civ. P. 56(a).

[3] 411 U.S. 792 (1973); *see Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam) (applying the *McDonnell-Douglas* framework to § 1981 claims); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583–84 (Tex. 2017) (applying the *McDonnell-Douglas* framework to claims of discrimination under the Texas Labor Code); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781–82 (Tex. 2018) (applying the *McDonnell-Douglas* framework to retaliation claims under the Texas Labor Code).

[4] *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (citing *McDonnell Douglas*, 411 U.S. at 802).

[5] *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).

[6] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

race discrimination under both statutes if she shows that: "1) she belongs to a protected group; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) she was replaced by someone outside of her protected group or a similarly situated employee outside of her protected group was treated more favorably."[7] In reduction-in-force cases, like this one, the fourth prong is framed as "whether similarly situated employees who were not members of the protected class avoided the layoffs."[8]

The district court held that Brown was unable to satisfy the fourth element of her *prima facie* case. In so concluding, the court found that Brown's proffered comparators—Aguirre and Savely—were not similarly situated because Savely held a different position and Brown identified Aguirre as one of her immediate supervisors. On appeal, Brown argues that the summary judgment evidence shows that she and Aguirre were similarly situated because both were line chefs and "[e]veryone agreed" that Brown and Aguirre were co-workers.

Because the parties do not dispute the first three *prima facie* elements, we only address the final element. The record includes conflicting evidence as to whether Aguirre was Brown's immediate supervisor. However, even assuming that Aguirre was not Brown's supervisor, Brown fails to offer any evidence that she and Aguirre were otherwise similarly situated because they shared the same supervisor, job responsibilities, experiences, or qualifications.[9] To the contrary, the record shows significant differences

---

[7] *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022) (citations omitted). Because courts follow Title VII jurisprudence when analyzing discrimination claims under the Texas Labor Code and § 1981, we consider Brown's race discrimination claims together. *Id.*; *Ross*, 993 F.3d at 321.

[8] *Harville*, 945 F.3d at 875 n.14.

[9] *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) (explaining that the court considers a "variety of factors . . . when determining whether a

between Brown and Aguirre. For example, although Brown and Aguirre shared the same job title, Aguirre had over six years of experience in that role, whereas Brown had only one year of experience.[10] Additionally, Aguirre had different responsibilities than Brown, such as setting the department's schedule and approving requests for time off. In light of these differences, Aguirre is not an appropriate comparator for Brown's *prima facie* case. Accordingly, we affirm the district court's grant of summary judgment with respect to Brown's race discrimination claims.

## B.

Turning to Brown's disability discrimination and failure-to-accommodate claims under the Texas Labor Code, the district court acknowledged that these two claims are distinct[11] and therefore analyzed

---

comparator is similarly situated, including job responsibility, experience, and qualifications" (internal quotation marks and citation omitted)); *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." (internal citations omitted)).

[10] *See Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) ("The mere fact that [plaintiff] shared the same job title as the [proffered comparators] . . . is insufficient to meet her burden to show that they are proper comparators."); *McElroy v. PHM Corp.*, 622 F. App'x 388, 392 (5th Cir. 2015) (per curiam) (unpublished) (reasoning that "a plaintiff's coworkers were not qualified comparators because, among other reasons, they had been hired at different times," and "their positions require[d] different levels of skill and responsibility—even where they intermittently perform[ed] the same job duties"). Unpublished opinions issued on or after January 1, 1996, are not biding precedent, but they may be persuasive authority. *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006); 5TH CIR. R. 47.5.4.

[11] *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014) ("[W]e note that although their methods of proof are related, [a] failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment." (internal quotation marks and citation omitted) (second alteration in original)); *Dillard v. City of Austin*, 837 F.3d 557,

them separately.  Given that Brown's appellate brief does not challenge the district court's holding that she failed to raise a genuine dispute of material fact that she was terminated because of her disability, she has forfeited her disability discrimination claim.[12]

As it pertains to her failure-to-accommodate claim, Brown must show that: (1) she "is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations."[13]  Importantly, an employee has "a right to [a] reasonable accommodation, not to the employee's preferred accommodation."[14] Moreover, the accommodation "does not have to be the 'best' accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated."[15]

On appeal, Brown, citing her sworn declaration, asserts that she repeatedly requested reasonable accommodations[16] and that her supervisors either ignored or denied her requests.  But Brown does not address her

_____

561 (5th Cir. 2016) (acknowledging that "Texas courts interpret their state's disability legislation so as to mirror the federal [ADA] statute").

[12] *See Vernon Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023) ("[W]e have held that parties forfeited arguments by not attempt[ing] to rebut the district court's conclusions or by failing to cite the provisions at issue in the opening brief and explain[ing] why the [district] court was wrong about what those provisions permit." (internal quotation marks and citations omitted) (second and third alterations in original)).

[13] *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017) (internal quotation marks and citation omitted).

[14] *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009.

[15] *Id.* (internal quotation marks and citation omitted).

[16] In her declaration, Brown asserts that she asked her supervisors for the following accommodations: speak as loudly as possible, give her the opportunity to read lips, provide instructions in writing, and supply microphones or headsets.

testimony, relied upon by the district court, that the Food Bank did provide some of her requested accommodations by giving her written instructions and pictures and ensuring that chefs were on site to answer any questions she may have. And even more critically, Brown does not point to any evidence that the accommodations the Food Bank did provide were insufficient to ensure she could perform the essential functions of her job.[17] Thus, Brown has failed to create an issue of material fact as to whether the Food Bank provided her with a reasonable accommodation.

## C.

Finally, Brown brings a retaliation claim under § 21.055 of the Texas Labor Code. To establish a *prima facie* case of retaliation, Brown must show "(1) she engaged in an activity protected by the [Texas Labor Code], (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action."[18] The third *prima facie* element—the causation standard—"is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action."[19] But "if the employer provides evidence of a legitimate reason for the adverse action, . . . the employee must prove the adverse action would not have occurred 'but for' the protected activity."[20] At the pretext stage, in order to avoid summary judgment, the employee "must show that

---

[17] *See Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021) (holding that the plaintiff failed to show her employer's proposed accommodation was unreasonable, and that the fact the employer declined to provide plaintiff with her requested accommodation did not alter that conclusion).

[18] *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 782 (citations omitted); *see also id.* at 781 (noting that in "retaliation cases under the [Texas Labor Code], Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes, like Title VII").

[19] *Id.* at 782.

[20] *Id.*

there is a conflict in substantial evidence on this ultimate issue."[21] Evidence is considered "substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."[22]

The district court concluded that Brown established a *prima facie* case of retaliation by showing that she complained of discrimination in December of 2019, January of 2020, and April of 2020, and was ultimately terminated on April 25, 2020. However, the court went on to hold that Brown was unable to show that the Food Bank's proffered reason for her termination—a reduction in force caused by the COVID-19 pandemic—was pretextual.[23] We agree.

Brown argues that the following evidence demonstrates that the Food Bank's nonretaliatory explanation for her termination was pretextual: (1) the Food Bank was required to keep Brown's complaints of discrimination confidential, but Tesch informed Aguirre and Borrego about Brown's complaints; and (2) Brown was the only "regular employee" in the catering department that the Food Bank required to apply for other internal positions after the department was eliminated. We find this evidence, viewed in the light most favorable to Brown, does not create a genuine dispute as to whether she would not have been terminated but for the Food Bank's alleged retaliation.

---

[21] *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (internal quotation marks and citation omitted).

[22] *Id.* at 561–62 (internal quotation marks and citation omitted).

[23] *See id.* at 561 ("Elimination of an employee's position as a result of a reorganization or a reduction-in-force is a legitimate, non-retaliatory reason for the employee's termination.").

First, Brown asserts that the Food Bank violated its own protocol when Tesch informed Aguirre and Borrego about Brown's confidential complaint against them.  Although a "plaintiff can also show pretext by showing a departure from standard procedure[,] . . . mere deviations from policy, or a disagreement about how to apply company policy, do not show pretext."[24]  Here, Tesch testified that company policy required her to draft questions to the individuals named in a complaint regarding the complaint's allegations.  Tesch followed this policy by informing Aguirre and Borrego of the complaint against them and requiring them to answer questions pertaining to the complaint's allegations.  And although Tesch testified that she was required to keep complaints anonymous, she stated that the allegations in Brown's complaint made clear that Brown was the author.  In light of the above testimony, Brown has, at most, pointed to a disagreement in how the Food Bank applied its confidential complaint policy, and has provided no evidence that Tesch was "willing to deviate from established procedures in order to accomplish a discriminatory goal."[25]  Thus, Brown's reliance on Tesch's alleged departure from company policy is insufficient to create an issue of fact regarding pretext.[26]

Second, Brown contends that the Food Bank's justification for terminating her was pretextual because the other employees in her department were transferred to new positions within the Food Bank.  Brown

---

[24] *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459–60 (5th Cir. 2019).

[25] *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (internal quotation marks and citation omitted).

[26] *See McMichael*, 934 F.3d at 460 ("Even if a plaintiff can show that an employer consciously disregarded its own hiring system, that showing, on its own, does not conclusively establish that . . . a nondiscriminatory explanation for an action is pretextual." (internal quotation marks and citation omitted)).

conclusively asserts that she was the only employee required to "reapply" for employment, whereas the other employees in her department did not have to submit applications and were automatically transferred to new positions. Brown's argument is contradicted by the record. Specifically, Tesch testified that Brown, Aguirre, and Savely all *applied* for positions in other departments. Tesch further testified that she encouraged Brown to apply for a position with the Summer Feeding program before the applications had officially opened. And although Brown interviewed for the Summer Feeding program position, the program ultimately hired three individuals with prior program experience and training. Consequently, the record does not support Brown's assertion that she was the only employee within her department who had to reapply for employment.

In sum, because the Food Bank provided a nonretaliatory explanation for Brown's termination, and Brown failed to raise a genuine dispute of material fact that said reason was pretext for unlawful retaliation, the district court properly granted summary judgment on Brown's retaliation claim.

## III.

For the foregoing reasons, the district court's judgment is AFFIRMED.